City of Lorain, Appellee, *v.* Tomasic, Appellant.
[Cite as Lorain v. Tomasic (1979), 59 Ohio St. 2d 1.]

(No. 78-1216—Decided July 3, 1979.)

*Mr. John J. Hritsko,* director of law, and *Mr. Anthony J Giardini,* for appellee.

*Messrs. Smith & Smith, Mr. Timothy T. Smith* and *Mr. Joseph A. Ujhelyi,* for appellant.

*Per Curiam.* The fundamental issue raised in this appeal is whether there is an unconstitutional conflict between Lorain Ordinance 719.03(a) and R. C. 2915.09(B)(5). The ordinance is entitled "Rules of Bingo Play" with paragraph (a) thereof indicating: "No more than twelve hundred dollars ($1,200.00) shall be paid out in prizes at any bingo session, exclusive of door prizes." R. C. 2915.09 deals with rules for conducting bingo, and reads, in pertinent part: "(B) A charitable organization that conducts a bingo game shall not: * * * (5) Pay out more than three thousand five hundred dollars in prizes during any bingo session that is conducted by the charitable organization; * * *."

In the recent decision of *Brown* v. *Concerned Citizens, Inc.* (1978), 56 Ohio St. 2d 85, at page 89, we took note of the action of the voters of Ohio in amending our Constitution to legalize certain bingo operations and the vesting of

authority to regulate those games with the General Assembly:

"Effective November 5, 1975, the voters of Ohio approved a constitutional amendment permitting the General Assembly to authorize and regulate the operation of bingo games conducted by charitable organizations for charitable purposes. Section 6, Article XV of the Ohio Constitution. Pursuant to the above amendment, the General Assembly enacted R. C. 2915.07, effective May 26, 1976, authorizing charitable organizations which obtained a license from the attorney general to conduct bingo games."

The amendment, which passed by a "yes" vote of 1,-388,606, now reads:

"Lotteries, and the sale of lottery tickets, for any purpose whatever, shall forever be prohibited in this State, except that the General Assembly may authorize an agency of the state to conduct lotteries, to sell rights to participate therein, and to award prizes by chance to participants, provided the entire net proceeds of any such lottery are paid into the general revenue fund of the state *and the General Assembly may authorize and regulate the operation of bingo to be conducted by charitable organizations for charitable purposes.*" (Emphasis added.)

Pursuant to that mandate of the people, the General Assembly enacted R. C. 2915.08 to establish a licensing procedure supervised by the Attorney General. In addition, the new statutory scheme establishes various rules to be followed in the operation of those games and a system of record-keeping. See R. C. 2915.09 and 2915.10.

Although the foregoing is situated in the Criminal Code, those provisions are essentially regulatory rather than penal in nature as contended by the appellee.

As part of the regulatory scheme the General Assembly has indicated that once a charitable organization is properly licensed, it has a right, pursuant to R. C. 2915.09 (B)(5), to pay out up to, but no more than, $3,500 at any bingo session.

Section 3, Article XVIII of the Ohio Constitution gives

municipalities the authority to adopt and enforce within their limits "such local police, sanitary and other similar regulations, *as are not in conflict with general laws.*" (Emphasis added.) In *Struthers* v. *Sokol* (1923), 108 Ohio St. 263, this court established the test to be followed in ascertaining whether that proscribed conflict was present in the second paragraph of the syllabus: "In determining whether an ordinance is in 'conflict' with general laws, the test is whether the ordinance permits or licenses that which the statute forbids and prohibits, *and vice versa.*" (Emphasis added.) Or, as it was stated in a different context, a city ordinance cannot *forbid and prohibit what the statute permits and licenses.* *Auxter* v. *Toledo* (1962), 173 Ohio St. 444, 447.

In the case at bar, the ordinance forbids the payment of prize money in excess of $1,200 and is in direct conflict with a state statute which gives a charitable organization the right to pay out up to a maximum of $3,500. Thus we also disagree with appellee's assertion that R. C. 2915.09 (B)(5) does not expressly or *impliedly* grant a licensed charitable organization a right to pay out up to the maximum statutory amount.

To allow ordinances to be enacted throughout the state reducing maximum pay outs in any amount would destroy a uniform application of the newly enacted statutory scheme and create a potential for totally emasculating a duly licensed charitable organization's ability to conduct a lawful bingo operation. Such a construction of R. C. 2915.09(B)(5) would render its language virtually meaningless and nullify its effect.

Accordingly, since we find an unconstitutional conflict between the ordinance of the city of Lorain and an Act of the General Assembly, the judgment of the Court of Appeals must be reversed.

*Judgment reversed.*

CELEBREZZE, C. J., HERBERT, W. BROWN, P. BROWN, SWEENEY and LOCHER, JJ., concur.

HOLMES, J., dissenting. This case presents a close question which has previously been addressed by the Court of Appeals for Franklin County in the case of *American Meeting Halls, Inc.,* v. *City of Whitehall* (No. 76AP-942, March 22, 1977), unreported. In that case involving an ordinance of the city of Whitehall controlling the rental of premises for the conduct of bingo games, the court, upon which I served as a member, held that there was no "conflict" between the ordinance and the general laws.

In *Whitehall, supra,* the court stated:

"R. C. 2915.09 does not affirmatively grant powers to charitable organizations to engage in bingo. Instead it provides a penalty if a charitable organization goes beyond any specifically enumerated limitations placed upon its conduct of bingo games. It does not grant a power to non-charitable organizations such as appellant to lease premises for bingo games or protect them in respect to the lease of premises for such purposes. The Whitehall city ordinance in question simply prohibits more than is prohibited by state statute."

I respectfully shall maintain my position as expressed in *Whitehall.* Here, the city of Lorain has enacted a law pursuant to its constitutional home rule powers to prohibit the pay out of more than a certain amount by operators of bingo games. Neither the state law nor the Lorain ordinance affirmatively grants or licenses a bingo operator to pay out any money during a bingo session. Rather, each law forbids the pay out of an amount greater than expressed in those sections. I believe that applying the test of conflict as set forth in *Struthers* v. *Sokol* (1923), 108 Ohio St. 263, one must conclude that there is no conflict. In that no conflict exists, I would have to hold that Lorain Ordinance 719.03 (a) is constitutional.